# CRIMINAL CASES.

## COMMONWEALTH *vs.* NORMAN F. EDGERLY.

In support of an indictment for having counterfeit bank bills, with intent to pass them, knowing them to be false, evidence is competent of previous declarations of the defendant showing that he was then engaged in the business of passing counterfeit money; but the contents of a letter, containing counterfeit money, received by him at the post-office and immediately taken from his possession before he had opened it, cannot be proved.

If the presiding judge, after admitting an incompetent letter, the contents of which are of a nature to prejudice the defendant in an indictment, to be read to the jury, reconsiders his ruling and instructs them to disregard it, but finally allows it to go with the other papers to the jury, against the defendant's objection, a new trial should be granted.

INDICTMENT under Gen. Sts. *c.* 162, § 8, against the defendant for having a counterfeit bank bill in his possession with intent to pass the same, knowing it to be counterfeit.

At the trial in the superior court, before *Rockwell,* J., Nehemiah Flanders, city marshal of Newburyport, testified that in September he saw the clerk at the post-office pass out some letters to the defendant, and that immediately afterwards he arrested him ; that he took the letters from the defendant's possession after bringing him to the station house, and found them to be directed to him ; that upon the defendant's refusal to open hem he himself opened one of them ; that there was a letter within the envelope and several bank bills, one of which was described in the indictment. The defendant objected to the admission of the contents of the envelope in evidence, but the judge allowed them to be read to the jury. Two witnesses testified that the bill described in the indictment was a counterfeit almost exactly resembling the genuine bills of the Bank of

Commerce; and that the other bills were counterfeit, excepting one, which was a genuine bill on a broken bank.

Benjamin Austin, a witness for the Commonwealth, testified, under objection, that in the preceding June he met the defendant; " he asked me if I did not want to go away with him, to see if we could not make some money. I asked him how. He showed me a large roll of bills which he said were ' bogus.' I told him it was rather too risky business for me, and I guessed I would not trouble it. He cautioned me to say nothing about it. In a few days I saw him again. He wanted me to go down the river with him. I told him I had no money, and besides could not leave my work. He said that was no matter, and took out three or four dollars in fractional currency and gave them to me. It was bran new. We found we could not get a boat that afternoon, and I offered it back to him. He told me to keep it, and I did so. I disposed of it, and some days afterwards he asked me if I had disposed of it. I told him yes, and he laughed. I asked him if it was not good, and he said, Yes, it was good, if I had got rid of it. At one of these last two interviews he said he had disposed of some of the money he had showed me; that he had been to Ipswich, and made a good haul."

The defendant, among other things, requested the judge to rule that " there was no evidence in the case from which the jury can find a guilty knowledge in regard to this bill; " but the judge ruled, among other things, that " the evidence tending to show that previous to these transactions the defendant had other counterfeit money in his possession, knowing it to be counterfeit, with intent to pass the same, is competent for the consideration of the jury; but the contents of the letter are not evidence for the consideration of the jury in this case."

The letter, besides having been read by Flanders, as before stated, was also read to the jury by the district attorney in his closing argument. After the ruling excluding it from their consideration had been announced in the charge, the district attorney asked that it might be allowed to go to the jury with the other papers in the case    The defendant objected, but the

judge allowed it to go, repeating the instruction that it was not evidence for the consideration of the jury, and was not to be read by them.

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*S. B. Ives, Jr.,* for the defendant, cited *Fairlie* v. *Denton,* 3 C. & P. 103; *Rex* v. *Plumer,* Russ. & Ry. 264; *Alger* v. *Thompson,* 1 Allen, 453; *Farnum* v. *Farnum,* 13 Gray, 508; *Commonwealth* v. *Stone,* 4 Met. 43; *Commonwealth* v. *Stearns,* 10 Met. 256; *Rex* v. *Ball,* 1 Camp. 324; *Rex* v. *Smith,* 4 C. & P. 411; *Commonwealth* v. *Bigelow,* 8 Met. 235.

*Reed,* A. G., for the Commonwealth, besides some of the cases cited by the defendant, cited *People* v. *Green,* 1 Parker's Crim. Cas. 11; *Commonwealth* v. *Turner,* 3 Met. 19; *Finn* v. *Commonwealth,* 5 Rand. (Va.) 701; *Reed* v. *The State,* 15 Ohio, 217.

BIGELOW, C. J. The conversations of the defendant with Austin were clearly competent and relevant to the issue. One of the material points, which it was necessary for the prosecution to make out, was the guilty knowledge of the defendant respecting the bills found in his possession. This is sometimes shown by evidence that the defendant has recently had other counterfeit money than that which is the subject of the indictment in his possession, and has offered to pass the same as true. Such testimony is deemed to be admissible, although it may relate to a different kind of money from that which is described in the indictment; and it is held to be relevant, although several weeks and even months may have elapsed since such previous possession or attempt to pass. *Rex* v. *Balls,* 1 Moody, C. C. 470. *Regina* v. *Nisbett,* 6 Cox, C. C. 320. Evidence of this kind, however, is not deemed to be competent unless the particular bill or note to which it relates is produced at the trial, or sufficient reason is shown for its non-production. *Commonwealth* v *Bigelow,* 8 Met. 235. If the evidence offered at the trial had been of this precise character, that is, if the testimony of Austin had been introduced for the purpose of proving that on a previous occasion the defendant had attempted to pass as true

certain bills or notes which were false or counterfeit, it could not properly have been admitted without the production of the bills or notes, or satisfactory evidence to account for their non-production. But the testimony admitted at the trial did not tend to establish such fact. It did not show that the defendant had attempted to pass other bills than those set out in the indictment as genuine which were in fact false, or that he had them in his possession for that purpose. But it did prove an admission or confession that he was a dealer in counterfeit money, and had attempted to dispose of it as such to the witness. It cannot be doubted that a direct statement by the defendant, made previous to the transaction which forms the subject of the indictment, that he was accustomed to buy and sell counterfeit money and was familiar with different kinds of forged notes or bills, would have been admissible as tending to prove the guilty knowledge of the defendant. The testimony introduced at the trial was in effect of this character, and it was competent as a confession or admission having a material bearing on one of the issues before the jury, without the aid of extrinsic facts to render it admissible.

The letter which the defendant took from the post-office was clearly incompetent. It was in the hands of the defendant during a very brief period of time, and he neither opened nor read it. An unanswered letter is inadmissible, although the statements contained in it are well known to the party to whom it was sent; and this is held on the ground that a letter written to a party by a third person, to which no reply is made, does not show an acquiescence in the facts stated in the letter. *Fearing* v. *Kimball*, 4 Allen, 125, 128. *A fortiori*, a letter addressed to a person which he has not read cannot be admitted to affect him in any way. The mistake of the judge was that he permitted the letter to go to the jury after he had ruled that it was inadmissible as evidence. This was clearly irregular, but it would be an immaterial error if the contents of the letter were unimportant; but on looking at them it is clear that they were of a nature to prejudice the minds of the jury against the defendant, and to lead them to a belief that he was guilty of the crime

charged in the indictment. Then the only question is, whether the defendant's rights were sufficiently guarded by the direction of the judge that the letter was not evidence for the consideration of the jury, and was not to be read by them. And we are of opinion that they were not. The ruling was contradictory. If the letter was incompetent, it could not properly go to the jury ; but it being sent to them with the other documents in the case, it was in fact treated as a paper which was properly before them for consideration. In this conflict between the language and the action of the court, it is impossible to say that the jury might not have been so confused and misled as to have given some heed to the contents of the letter. When verbal testimony has been admitted in the course of a trial and subsequently on reconsideration ruled out, it is reasonable to suppose that the jury will follow the instructions of the court and give no weight to evidence which is withdrawn from their consideration, and which they are told to disregard. *Tapley* v. *Forbes*, 2 Allen, 26. But in such a case a verdict will be set aside unless it is certain that there could have been no misapprehension or mistake in the minds of the jury. *Farnum* v. *Farnum*, 13 Gray, 508. There can be no such certainty when a written document is permitted to go to the jury room after it has been rejected by the court. Upon this ground, we are of opinion that the verdict rendered against the defendant must be set aside.

Some of the court are inclined to the opinion that the evidence offered at the trial was insufficient to warrant a verdict of guilty. But as the aspect of the evidence may be essentially changed upon another trial, it is unnecessary to express a decided opinion on this point. *Exceptions sustained.*